# STORCK *v.* REICHHELM.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; CONSTRUCTION OF
CLAIMS.

1. Where claims in an interference involving the invention of a stamp-affixing machine call for means for holding a series of stamps having the form of a ribbon, and means for bending the first or end stamp at an angle to the ribbon, a machine constructed by one of the parties will not constitute reduction to practice, where it appears that in actual operation the machine performs the bending operation on the second, instead of the end, stamp.

2. *Quære,* whether two of the eight issues of an interference should be so construed as not to contain by inference certain limitations contained in the others, so as to preclude the conclusion that a machine built by one of the parties which failed to meet the requirements of such other issues met the requirements of the two issues.

3. Where an invention is so simple as to be readily understood by one skilled in the art from an examination of a sketch, the exhibition by the inventor of a sketch of his invention to such a person is sufficient to show disclosure of the invention, especially where it appears that the person examining the sketch clearly understood it.

4. The testimony of witnesses is not to be discredited merely because they testify from memory, especially where in testifying to dates they relate circumstances which would enable them to approximate the dates with convincing accuracy.

5. The testimony of witnesses will not be disregarded where their character and reputation are unimpeached and their statements are reasonable and in entire harmony with the circumstances. (Citing *Boynton* v. *Taggart,* 40 App. D. C. 82; and *Hopkins* v. *Peters,* 41 App. D. C. 302.)

6. The date of the sending by a party to an interference of a sketch of his invention to his attorneys for the purpose of having an application prepared will not be taken as the date of his disclosure of the invention, where the evidence shows that thereafter the attorneys wrote him twice, calling attention to a number of defects in his device which would render it inoperative, in reply to which he sent them a blueprint calling attention to a number of changes he had since made in the device, and thereafter he undertook to make further

changes, and it appears that such changes were vital ones and marked the dividing line between an operative and an inoperative device. (Citing *Mergenthaler* v. *Scudder*, 11 App. D. C. 264; and *Fenner* v. *Blake*, 30 App. D. C. 507.)

No. 1005. Patent Appeals. Submitted January 13, 1916. Decided February 7, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

*Mr. William S. Hodges* and *Mr. Franklin F. Phillips* for the appellant.

*Mr. George L. Wilkinson* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant, Frederick W. Storck, has appealed from the decision of the Commissioner of Patents awarding priority of invention to appellee, George L. Reichhelm, upon an issue expressed in the following counts:

"1. In a machine of the class described, means for holding a series of stamps having the form of a ribbon, means for bending the first or end stamp at an angle to said ribbon, means for retaining said stamp in said bent condition, and means for engaging said stamp and moving it toward and against an envelop or the like.

"2. In a machine of the class described, means for holding a series of stamps having the form of a ribbon, means for bending the first or end stamp at an angle to said ribbon, means for retaining said stamp in said bent condition, and means for engaging said stamp and moving it toward and against an envelop or the like, said retaining means also serving to assist

in securing and maintaining a firm engagement of said engaging means with said stamp.

"3. In a machine of the class described, a reel for holding a coil of stamps or the like having the form of a ribbon, means for holding the end portion of said ribbon in position to be operated upon by feeding mechanism, a secondary bending element around which the first or end stamp of said ribbon may be bent, and a primary bending element for performing the bending operation.

"4. In a machine of the class described, a reel for holding a coil of stamps or the like having the form of a ribbon, means for holding the end portion in position to be operated upon by feeding mechanism, a secondary bending element around which the first or end stamp of said ribbon may be bent, and a primary bending element for performing the bending operation, said secondary element being movable and adapted to engage said ribbon at the angle of the bend and to effect a feeding and positioning movement of the said ribbon.

"5. In a machine of the class described, a reel for holding a coil of stamps or the like having the form of a ribbon, means for holding the end portion in position to be operated upon by feeding mechanism, a secondary bending element around which the first or end stamp of said ribbon may be bent, a primary bending element for performing the bending operation, said secondary element being movable and adapted to engage said ribbon at the angle of the bend and to effect a feeding and positioning movement of said ribbon, and means co-operating with said secondary bending element for retaining said end stamp in its bent position.

"6. In a machine of the class described, means for holding a series of stamps having the form of a ribbon, a secondary bending element around which a stamp may be bent, and a primary bending element for pressing said stamp around said secondary bending element.

"7. In a machine of the class described, means for holding a series of stamps having the form of a ribbon, a secondary bending element around which a stamp may be bent, and a

primary bending element for pressing said stamp around said secondary bending element, said secondary element being movable and adapted to engage said stamp and effect a feeding and positioning movement thereof.

"8. In a machine of the class described, means for holding a series of stamps having the form of a ribbon, a secondary bending element around which a stamp may be bent, a primary bending element for pressing said stamp around said secondary bending element, said secondary element being movable and adapted to engage said stamp and effect a feeding and positioning movement thereof, and means adapted to retain said stamp in its bent condition."

It appears that Storck about May, 1910, began the construction of stamp-affixing machines. He constructed, prior to the one in issue, three of specifically different types. While he urges that his machine, exhibit No. 4, constitutes a reduction to practice of the invention in issue, the contention was not upheld by any of the tribunals below. We are in accord with this conclusion. Machine No. 4 in actual operation performs the bending operation on the second, instead of the end, stamp, which forbids the reading of the present issue upon it. True, claims 6 and 7, if standing alone, might bear the construction contended for by Storck, and be read on his exhibit No. 4 machine. The tribunals below, however, held that these claims, read in connection with the other claims, contained by inference the limitations relating to the means for bending the end stamp, which is the subject-matter of this invention. The Commissioner in a prior decision upholding the patentability of the claims in issue as a distinct advance in the art said: "Each of the claims sufficiently defines this idea in that they specify either means for bending at the first stamp or a bending element around which the bending at the end stamp may be effected." A definite construction of claims 6 and 7 is unnecessary, since in our view Storck has clearly established priority, and is entitled to the claims, whether readable or not, on his exhibit No. 4 machine.

Storck's Case turns upon a pencil sketch of his invention,

exhibit No. 5, as the basis of conception and disclosure. In this he is corroborated by two witnesses, who testify that the sketch was shown to them about the first week in December, 1910. Witness Emmons testified that the sketch was shown to him by Storck about two or three weeks before he and Storck made a trip to Washington, which is fixed by the record as occurring two or three days prior to New Years. Witness Gray testified that Storck spoke to him about the invention late in November, 1910, and showed him a sketch, exhibit No. 5, the first week in December, but that the principle of the machine had been explained to him a few days before he was shown the sketch. He fixes the date with reference to the date he began to work for the Standard Stamp Affixer Company, November 16, 1910, and by reference to the Washington trip.

If these witnesses, in connection with Storck, are to be credited, Storck must be accorded a date early in December, 1910, certainly prior to the 15th of that month. On the strength of this testimony the Board of Examiners in Chief held that Storck was entitled to priority. The Examiner, however, refused to credit this evidence, on the ground chiefly that the witnesses had not testified that Storck had explained the invention to them at the time they were shown the sketch. There are times when such explanation is unnecessary to constitute disclosure, and we think this is one of the cases. The sketch very clearly discloses the invention. It bears no indication that it has been changed; indeed, no such contention is made. Emmons and Gray were familiar with Storck's prior machines, and the improvement was so simple as to be readily understood by one skilled in the art from a mere observation of the sketch. But it was explained. The sketch conforms to the disclosure of the principle of the invention as explained to Gray a few days before he was shown the sketch. Gray, in his testimony, explained in detail the manner in which Storck illustrated the invention to him at that time. He testifies that when the sketch was shown him verbal explanation was made. Emmons, on the other hand, had been associated with Storck through the construction, handling, and development of the

former machines; hence, the sketch to him was self-explanatory. It also appears from the evidence he clearly understood it.

These witnesses have not been impeached, contradicted, or in any particular discredited. It will not do to discredit their testimony purely upon the hypothesis, as suggested in the opinion of the Commissioner, that they testified to these facts purely from memory. Their dates are fixed from circumstances which would enable them to approximate the date with convincing accuracy. We agree with the Examiners in Chief that Storck has established a date of disclosure prior to December 14, 1910. "To hold that this was not done would be arbitrarily to disregard and set at naught the testimony of witnesses whose character and reputation are unimpeached, and whose testimony is reasonable and in entire harmony with the circumstances of this case. We are unwilling to assume such a position." *Boynton* v. *Taggart,* 40 App. D. C. 82. See also *Hopkins* v. *Peters,* 41 App. D. C. 302.

We now come to Reichhelm's Case. On December 6, 1910, he took what was supposed to be a sketch of his invention to his attorneys in Chicago for the purpose of having an application prepared. The sketch was turned over to the draftsman to prepare drawings. On December 19, 1910, Reichhelm's attorneys wrote him, calling attention to a number of defects which would render the device inoperative. In reply to this, under date of December 21, 1910, Reichhelm wrote his attorneys, inclosing a blueprint drawing calling attention to a number of changes in the disclosure made to them on December 6th. Among the changes suggested was the following relating to the operation of the machine respecting the bending of the stamp: "Have also discovered this in practical demonstration, and have overcome it by means of a small piece of music wire fastened to the holding spring as per sketch 2. This little piece of music wire also permits us to move the tongue forwardly a little more ar ' give the wip. r lever less distance to travel. We have found in actual practice that it does not require more than $\frac{1}{8}$ of an inch movement of the cutting edge of the severing lever to sever the stamp, and this little music-wire spring will invariably bend the stamp

over the highest point of the severing lever immediately after the stamp is severed, as shown in sketch No. 3."

Reichhelm's attorneys in their letter also called attention to an "interference of severing lever with moistener at bottom of stroke." In relation to this Reichhelm stated in his reply letter as follows: "We advise that we have moved the fulcrum of the moistening lever and transposed the fulcrum of the wiper (these two pieces are designated X and Y respectively) so that we will gain all the space in front of the machine when this lever is at its most outward position, with the exception of the wiper itself, plus about $\frac{1}{8}$ of an inch clearance. In this way we will keep the end of the moistening lever from interfering with the handling of the severing lever."

These were vital changes. They mark the dividing line between an operative and an inoperative device. Until the piece of music wire was inserted, the end stamp could not be bent in position to receive the downward stroke of the plunger, and the bending of the stamp goes to the very heart of the invention. It appears that Reichhelm, after seeing his attorneys, engaged in the construction of a machine. It thus appears that he was inventing while engaged in reducing to practice. In his letter of the 21st he speaks of matters discovered "in practical demonstration," or "in making up the practical machine." The function of the piece of music wire, first disclosed in his letter, later appeared in his specification as follows: "Another element of my mechanism which I will mention at this time is a small wire spring or finger 44, which is adapted to press a new stamp $22^a$ (fig. 4) forwardly a small distance after its end 43 has been severed from the end 42 of the preceding stamp 22. The purpose of this is to carry the end of the stamp 43 over the lower portion $34^a$ of the severing lever into a position where it will bend forwardly thereby in the return movement of the severing lever 33."

Thus it appears that the earliest date on which Reichhelm can claim a conception, complete and ready to put into practical form, was December 21, 1910. It is this practical conception which the patent law requires. *Mergenthaler* v. *Scudder,* 11

App. D. C. 264; *Fenner* v. *Blake,* 30 App. D. C. 507. The disclosure of December 6, 1910, to his attorneys amounted to nothing more than an indefinite statement of what he hoped to accomplish. The sketch which was turned over to the draftsman demonstrated a defective conception of the operative details which deprives him of the right to claim that sketch and interview as a disclosure of the invention of the issue. December 21, 1910, is, therefore, the earliest date Reichhelm can claim, which is too late to overcome the established date of Storck.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required. *Reversed.*

A petition for a rehearing was denied March 13, 1916.